708 So.2d 271 (1998)
Gerald Eugene STANO, Appellant,
v.
STATE of Florida, Appellee.
No. 92614.
Supreme Court of Florida.
March 20, 1998.
*272 Mark E. Olive, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, and Kenneth Nunnelley and Judy Taylor Rush, Assistant Attorneys General, Daytona Beach, for Appellee.
PER CURIAM.
Gerald Eugene Stano, a prisoner on death row and under a death warrant, appeals the trial court's denial of his second motion for postconviction relief. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the trial court's ruling.
Gerald Stano was convicted in 1983 for the torturous murder of seventeen-year-old Cathy Lee Scharf. The State introduced Stano's taped confession to police in which Stano stated that he picked up Scharf while she was hitchhiking and offered to give her a ride to a skating rink.[1] The jury convicted Stano of first-degree murder and recommended death. The trial court found four aggravators: (1) prior conviction of a violent felony (Stano had previously pled guilty to eight other first-degree murders, for which he received two death sentences[2] and six life sentences); (2) the murder was committed during a kidnapping; (3) the murder was heinous, atrocious, or cruel; and (4) the murder was cold, calculated, and premeditated. The trial court found no statutory or nonstatutory mitigators and sentenced Stano to death. Stano's conviction and sentence were affirmed on appeal. Stano v. State, 473 So.2d 1282 (Fla.1985). The United States Supreme Court denied certiorari on January 21, 1986. Stano v. Florida, 474 U.S. 1093, 106 S.Ct. 869, 88 L.Ed.2d 907 (1986).
The Governor signed Stano's first death warrant on May 22, 1986. Execution was scheduled for July 2, 1986. Stano filed his first motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on July 1, 1986, the day before his scheduled *273 execution.[3] The trial court denied the request and ruled that all the claims except the ineffective assistance of counsel claims were procedurally barred. As to the ineffective assistance of trial counsel claims, the trial court ruled that no evidentiary hearing was required after Stano's counsel conceded that he could not prevail on those claims even if given the opportunity. The trial court then granted a stay of execution until 10 a.m. July 2, 1986, to allow Stano the opportunity to appeal the ruling
This Court granted a temporary stay of execution on July 2, 1986, and allowed Stano the opportunity to appeal the trial court's denial of his 3.850 motion. See Stano v. State, 492 So.2d 1335 (Fla.1986). Thereafter, this Court affirmed the trial court's denial of relief and vacated the stay of execution. Stano v. State, 497 So.2d 1185 (Fla.1986). The United States Supreme Court denied certiorari on May 18, 1987. Stano v. Florida, 481 U.S. 1059, 107 S.Ct. 2203, 95 L.Ed.2d 858 (1987).
The Governor signed Stano's second death warrant on June 4, 1987. Execution was set for August 26, 1987. On July 6, 1987, this Court denied Stano's motion for a five-day extension to file a petition for writ of habeas corpus. Stano filed no further collateral motions in the state courts. Stano filed a petition for writ of habeas corpus in the United States District Court for the Middle District of Florida on August 22, 1987. The district court concluded that of all Stano's claims, only the ineffective assistance of counsel claims required an evidentiary hearing. After a limited evidentiary hearing, the district court denied relief and granted a temporary stay of execution. On August 28, 1987, the United States Court of Appeals for the Eleventh Circuit granted a stay of execution. Stano v. Dugger, 828 F.2d 12 (11th Cir.1987). Initially, the Eleventh Circuit issued a panel opinion affirming the district court's denial of habeas relief. Stano v. Dugger, 883 F.2d 900 (11th Cir.1989).
However, the circuit court reconsidered Stano's claims en banc and affirmed the district court's denial of habeas relief on Stano's ineffective assistance of counsel claims, but it remanded the case to the district court for an evidentiary hearing on three issues.[4]Stano v. Dugger, 901 F.2d 898 (11th Cir.1990) (en banc). On June 10, 1992, after conducting an extensive evidentiary hearing over a fifteen-day period, the district court issued a twenty-eight-page order which included detailed factual findings and denied Stano habeas relief.[5] On appeal, the circuit court affirmed the district court's ruling. Stano v. Butterworth, 51 F.3d 942 (11th Cir.1995).[6] The United States Supreme Court denied certiorari on February 20, 1996. Stano v. Singletary, 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996).
*274 The Governor signed Stano's third death warrant. Execution was scheduled for April 29, 1997. On March 18, 1997, Stano filed a notice of conflict in respect to his then counsel who was the Capital Collateral Representative (CCR). On March 25, 1997, this Court issued an order finding no conflict of interest in CCR's representation of Stano. On April 23, 1997, this Court expressly recognized CCR as counsel for Stano, stayed Stano's execution until May 30, 1997, and consolidated Stano's case with the litigation concerning the electric chair in Jones v. Butterworth, 691 So.2d 481 (Fla.1997). This Court directed CCR to file in the trial court any postconviction motions available to Stano by May 9, 1997. Stano v. Singletary, 692 So.2d 180 (Fla.1997). No motion was filed in the trial court, and no request for extension of time was filed in either the trial court or this Court. Thereafter, prior to May 30, 1997, this Court stayed Stano's execution pending resolution of the electric chair issue being litigated in the Jones case.
On October 20, 1997, in view of the decision issued in Jones v. State, 701 So.2d 76 (Fla.1997) (declaring that execution in the electric chair is not cruel or unusual punishment), cert. denied, ___ U.S. ___, 118 S.Ct. 1297, 140 L.Ed.2d 335 (1998), this Court dissolved the stay issued in this case. On the same day, this Court received notice that the Governor had reset Stano's execution for March 23, 1998. We ordered that any further proceedings in this case be expedited and set oral argument for February 6, 1998. Nothing was filed, and the case was removed from the oral argument calender.
Beginning March 6, 1998, several motions were filed on behalf of Stano.[7] On March 19, 1998, Stano filed the following four motions in the trial court: (1) a 3.850 motion; (2) a motion to disqualify the judges of the Eighteenth Circuit; (3) a motion to disqualify the State Attorney for the Eighteenth Circuit; and (4) a motion to determine the admissibility of evidence. On March 19, 1998, the trial court held a preliminary hearing, after which the trial court denied the first three motions and determined that the fourth motion was moot by virtue of the denials.
In its order, the trial court initially denied relief on the basis that all the claims were barred because this Court had previously issued an order mandating that all Stano's claims be filed before May 9, 1997. Finding that Stano knew of the basis for each claim before May 9, 1997, the trial court ruled that the motion was untimely. Additionally, the trial court ruled that the motion was untimely under Florida Rules of Criminal Procedure 3.850(b) and 3.851(b), reasoning that none of the claims qualified as newly discovered evidence; that the claims were successive under rule 3.850(f) because some claims have been previously resolved; and that any new grounds raised constitute an abuse of procedure under rule 3.850(f) because they could have been raised in previous postconviction proceedings.
We recognize the propriety of the trial court's determination that our order dated April 23, 1997, barred any further motions on behalf of Stano based upon information available before May 9, 1997. The trial court is bound by this Court's order. However, in view of the circumstances involved in the stay of this case in respect to the electric chair, we agree with the court's consideration of the merits of the 3.850 motion belatedly filed on March 19, 1998. We have also considered the 3.850 motion on its merits.
In his motion before the trial court, Stano raised five issues. In his first issue, Stano argued that he should receive a new trial because Clarence Zacke has purportedly recanted his trial testimony. In support of this argument, Stano filed a copy of Nash Rosenblatt's affidavit in which Rosenblatt, a free-lance writer, claims that Zacke told him in a telephone interview that Stano never *275 really confessed to killing Scharf. Zacke also stated in the interview that Stano's prosecutors offered him certain rewards in exchange for his testimony against Stano. When Zacke agreed to testify against Stano, prosecutors then coached Zacke on what he should say. Rosenblatt wrote an article based on this interview[8] and mailed a copy to Stano in April 1997.
The trial court found that this claim is meritless because Stano has failed to demonstrate how Rosenblatt's testimony regarding Zacke's alleged recantation and allegations of prosecutorial misconduct would be admissible at a new trial under our rules of evidence because there is no indication that Zacke's statement to Rosenblatt was under oath. The trial court notes that there is no affidavit from Zacke. We have previously held that recanted testimony is "exceedingly unreliable." Spaziano v. State, 660 So.2d 1363, 1365 n. 1 (Fla.1995). However, we do not reach the issue of the admissibility of Rosenblatt affidavit. Assuming without deciding that this affidavit is admissible newly discovered evidence, we agree with the trial court that there is no reasonable probability that the outcome of a new trial would produce an acquittal. In order to qualify as newly discovered evidence, "the asserted facts must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known them by the use of diligence." Robinson v. State, 707 So.2d 688 (Fla.1998). If the proffered evidence meets the first prong, to merit a new trial the evidence must substantially undermine confidence in the outcome of the prior proceedings or the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. Id. Because of the questionable reliability of the proffered evidence and since Stano confessed to Officer Hudson in March 1981 and to Detective Manis in a tape-recorded confession in August 1982, in addition to confessing to Clarence Zacke, we conclude that it is not probable that this evidence would produce an acquittal on retrial.
We agree with the trial court's rejection of Stano's claim that his execution should be stayed pending Stano's collateral attack upon five of the eight prior violent felonies the trial court relied upon to impose a death sentence. This claim is grounded on the premise that five of Stano's prior murder convictions are invalid because his attorney for those offenses, Howard Pearl, had a conflict of interest in that while he represented Stano, he was also a special deputy sheriff in Volusia County. Stano filed a 3.850 motion challenging these Volusia County murder convictions. The trial court denied the motions, and appeals are pending before this Court and the Fifth District Court of Appeal. As a basis for a 3.850 motion in this case, the trial court correctly found that this claim is time-barred because the Howard Pearl issue has been known since 1989.
We also reject this claim on its merits. Stano argues that under Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (vacating death sentence predicated in part on aggravating circumstance of prior conviction of violent felony when conviction upon which that aggravating circumstance was based was later set aside), if his convictions are set aside, then his death sentence in this case would be constitutionally infirm. First, Johnson is not applicable because Stano's prior convictions have not been set aside. See Eutzy v. State, 541 So.2d 1143, 1146 (Fla.1989) (fact that defendant is merely seeking collateral review of conviction which served as sole evidence of prior violent felony conviction does not entitle defendant to relief under Johnson.)
Second, even if these convictions were set aside, Johnson would not require a reversal of the death sentence here. There would remain three other murder convictions upon which the trial court could have relied to find the prior violent felony aggravator. In addition to this, there were three other valid aggravating circumstances. Therefore, even if the convictions were set aside, there still remains sufficient aggravation, especially when pitted against no mitigation, to sustain a death sentence. See Henderson v. State, 617 So.2d 313, 316 (Fla.1993); Tafero v. *276 State, 561 So.2d 557, 559 (Fla.1990); Bundy v. State, 538 So.2d 445, 447 (Fla.1989).
We affirm the trial court's rejection of Stano's third and fourth issues. Stano alleged that newly discovered evidence regarding police investigator Paul Crow's credibility requires that he be granted a new trial.
Stano presented the affidavits of several law enforcement officers stating that Crow is a liar who will lie under oath to protect himself or his cases. We agree with the trial court that this evidence does not meet the first prong of the test because these statements could have been discovered through due diligence within the time requirements of the rule. Therefore, this argument is procedurally barred. Furthermore, as with the Rosenblatt affidavit, we agree that this evidence, even if newly discovered, would not probably produce an acquittal.
Stano argued that Crow lied to the district court judge in the federal habeas proceeding when asked if he was pursuing a book deal on Stano's story. Stano states that he now has audio tapes provided by Andy Campanaro in April 1997 which establish that Crow and Campanaro were negotiating a deal in 1986 for a book which would be based on Stano. We find that the trial court did not abuse its discretion in determining that Stano has failed to establish how Crow's negotiating for a book deal in 1986 is relevant. Even if the evidence was found to be relevant and not procedurally barred, this evidence is not of such a nature as to make an acquittal on retrial probable.
Stano also argued that the Campanaro tapes reveal that Crow told Campanaro that he had heard Stano confess to a crime which Crow thought he had not done. As the trial court stated in her order, the "false confessor issue" was litigated in the federal habeas proceedings and determined adversely to Stano. Stano, 51 F.3d at 942-43. We agree with the trial court that even if this evidence were considered newly discovered evidence for the reasons previously stated, the evidence would not make an acquittal at a retrial probable.
Next, Stano argued that he should receive a new trial because Crow induced Stano's confession with the promise of a life sentence. The basis for this argument is Crow's testimony at the federal proceeding which took place in 1992. Because the facts which form the basis of this argument were known more than five years ago, this argument is procedurally barred. Robinson.
In his fifth issue, Stano claimed that he was denied due process of law because he was denied continuous representation by the Capital Collateral Regional Counsel's office. Stano presented this exact claim in his motion dated March 6, 1998, in which he sought a stay of execution and other mandatory injunctive relief. By order dated March 10, 1998, we denied the motion stating, "We find that the motion contains no colorable claim for stay of execution." The trial court properly denied the claim based on our previous order.
Accordingly, we affirm the denial of Stano's motion for postconviction relief. We also affirm the trial court's denial of Stano's motion to disqualify the judges of the Eighteenth Circuit, his motion to disqualify the State Attorney for the Eighteenth Circuit, and the trial court's ruling that Stano's motion to determine the admissibility of evidence was moot. No motion for rehearing will be permitted.
OVERTON, HARDING, WELLS and PARIENTE, JJ., concur.
KOGAN, C.J., and SHAW and ANSTEAD, JJ., concur in result only.
NOTES
[1] Specifically, in March 1981, Stano confessed regarding Scharf's murder to officers Paul Crow of the Daytona Beach Police Department and David Hudson of the Volusia County Sheriff's Office. On August 11 and 12, 1982, Stano again confessed regarding the Scharf case to detective John Manis of the Brevard County Sheriff's Office. Manis taped Stano's August 12, 1982, confession. All three officers testified at Stano's second trial, and Stano's taped confession was also introduced.
[2] These two death sentences for murders occurring in Volusia County have been affirmed by this Court. Stano v. State, 460 So.2d 890 (Fla. 1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985).
[3] Stano raised the following six issues in his 3.850 motion: (1) whether the confessions leading to the six prior guilty pleas which were introduced in aggravation were coerced; (2) whether the State improperly withheld exculpatory evidence that the confessions were coerced; (3) whether counsel was ineffective for failing to adequately cross-examine a State witness; (4) whether trial counsel was ineffective for failing to object to the State's cross-examination of Stano during the sentencing proceeding; (5) whether the trial court erred in allowing two psychiatrists to testify for the State as to statutory mitigators; and (6) whether the defense expert who conducted a psychological study of Stano was incompetent.
[4] The district court was to consider: (1) whether the State withheld exculpatory evidence from Stano in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (2) whether the testimony of Clarence Zacke violated United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); and (3) whether the sentencing court's reliance on two prior convictions as aggravating factors was reversible error under Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), because those convictions were reversed on appeal.
[5] On August 17, 1993, Stano moved the district court to set aside its judgment pursuant to Federal Rule of Civil Procedure 60(b) based on allegations that Paul Crow had written the foreword in a book based on Stano. The district court denied the motion.
[6] The circuit court, citing largely to the district court's findings of fact, held that there were no violations under Brady or Henry. Moreover, the court held that there was no Johnson violation because the two convictions which were overturned were later reinstated. The circuit court also affirmed the district court's ruling denying Stano's rule 60(b) motion.
[7] On March 6, 1998, Stano filed a "Motion for Stay of Execution and Other Mandatory Injunctive Relief." This Court denied the motion by order dated March 10, 1998. On March 17, 1998, Stano filed a "Motion for Stay of Execution, for Designation of Judge to Hear Rule 3.850 Motion, and for Determination of Question of Law Which Has Not Been, but Ought to be, Decided by the Florida Supreme Court." By order dated March 18, 1998, this Court denied the motion for stay and denied the remainder of the motion without prejudice to pursue all issues in the trial court.
[8] It is unclear from the filings whether this article was ever published.